MARILYN E. BEDNARSKI (No. 105322)
DAVID S. McLANE (No. 124952)
CAITLIN S. WEISBERG (No. 262779)
mbednarski@kmbllaw.com
KAYE, McLANE, BEDNARSKI & LITT, LLP
234 East Colorado Boulevard, Suite 230
Pasadena, California 91101
T: (626) 844-7660 / F: (626) 844-7670

Attorneys for Plaintiff OBIE STEVEN ANTHONY, III

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGGIE D. COLE,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF LOS ANGELES et al.,<br><br>  Defendants. | Case No. CV 11-03241-CBM (AJWx)<br>Case No. CV 12-01332-CBM (AJWx)<br>Case No. CV 13-07224-CBM (AJWx)<br><br>[Honorable Consuelo B. Marshall]<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' CITY OF LOS ANGELES, RAZANSKAS AND WINN'S OPPOSITION TO PLAINTIFF ANTHONY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND OR SUMMARY ADJUDICATION; DECL BEDNARSKI; SUPP. EXHIBITS**<br><br>Date:   January 13, 2015<br>Time:  10:00 a.m.<br>Ctrm:   2 |
| OBIE S. ANTHONY, III,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF LOS ANGELES et al.,<br><br>  Defendants. | |
| OBIE S. ANTHONY, III,<br><br>  Plaintiff,<br><br>  v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>  Defendants. | |

PLF'S REPLY TO DEF. CITY, RAZANSKAS AND WINN'S OPP. TO
PLF'S MOTION FOR PARTIAL S. J. &/ OR SUMMARY ADJUD.

1

Plaintiff Obie Anthony hereby replies to the Defendants' City of Los Angeles Razanskas and Winn's Opposition to Plaintiff Anthony's Motion for Partial Summary Judgment and/or Summary Adjudication. Plaintiff also attaches Supplemental exhibits which address factual issues raised for the first time in Defendants' Opposition.

DATED: Jan. 6, 2015                    Respectfully Submitted,

                                      KAYE, McLANE, BEDNARSKI & LITT, LLP

                              By:   /S/ Marilyn E. Bednarski
                                  MARILYN E. BEDNARSKI
                                  DAVID S. McLANE
                                  CAITLIN S. WEISBERG
                                  Attorneys for Plaintiff Obie S. Anthony, III

pLF'S REPLY TO DEF. CITY, RAZANSKAS AND WINN'S OPP. TO PLF'S MOTION FOR PARTIAL S. J, &/ OR SUMMARY ADJUD.

2

MEMORANDUM OF POINTS AND AUTHORITIES

I. THIS COURT SHOULD GRANT SUMMARY JUDGMENT ON THE ISSUES RAISED AS TO THE ARTHUR JONES CARD B IDENTIFICATION: THAT IT WAS SUPPRESSED, THAT THE INFORMATION WAS EXCULPATORY AND ITS SUPPRESSION PREJUDICED THE TRIAL

A. Suppression

Defendants take a position that has no basis in fact, that the Arthur Jones' Card B identification report and photocopy of the Card B photo-spread he initialed (hereinafter referred to as "Card B documents") were actually in the murder book all along. This position is based solely on Detective Winn's declarations and is contradicted by the 20 year history of facts in this case. Now Detective Winn claims that the Card B documents were in the murder book (Def. Exh. A ¶¶60, 98 & Def. Exh, QQ at ¶5); that she produced "full copies" of the murder book to defense counsel (Exh. A ¶99); and, that she believes the defense attorneys had the documents (Def. Exh. A ¶100 & Def. Exh. QQ ¶10). These statements all lack foundation, are not based on personal knowledge and should be stricken. In her Responses to Plaintiff's Requests for Admissions, she responded that she "did not recall exactly each page photocopied in 1994/95" such that she could not admit or deny that the murder book copied in 1994 did not include the Card B documents. Exh. 220; Excerpt of Winn's Responses to Plaintiff's RFAs 6 & 7.

The fact that they were not produced to the DA or defense attorneys is circumstantially supported by the conclusive facts that none of the attorneys archived files include the Card B documents, and none of the attorneys referenced the Card B documents during trial in any examination of a witness, or argument. The first time the Card B documents surfaced was in the Motion to Strike Proceedings in Imperial County.

It is undisputed that DA Castello, who tried this case, did not recall seeing the Card B documents before his deposition in this case. PSMF 61. It cannot reasonably

1  be disputed that the defense attorneys also did not have the Card B documents.
2  Every scrap of paper that originated from the LAPD and DA that went to Thomason
3  was produced in discovery to the City in this case; the Card B documents were not
4  in his file.  Att. Decl. Bednarski ¶ 3c; Exh. 221 Rule 26 Notice re Thomason File.
5  Thomason did not have the Card B documents before trial. Thomason Depo. 208;
6  Dkt 119-7 p. 30; Att. Supp. Thomason Depo. 209-210.   Had he had the documents,
7  he would have used them to cross-examine A. Jones and Winn. Att. Supp Excerpt
8  Thomason Depo. 210.  Attorney Tom also did not have the documents or use them
9  at trial.  Tom MTS 33-34; Dkt. 119-3, p 11-12. The only reasonable explanation for
10 the documents existence in the current copy of the murder book and non-existence
11 in the copy provided trial counsel is that they were not in the murder book in 1995.
12 Any claim otherwise is laid to rest by testimony of Attorney Tom who specifically
13 remembered comparing his copy of the murder book in 1994/95 page by page to the
14 detective's copy to make sure nothing was different or missing. Excerpt Depo. Tom
15 163-5; Dkt 119-7 pp. 82-84.

16      Now for the first time, Detective Winn claims the Card B documents were
17 there all along, but she cannot show that nor can she does she have personal
18 knowledge to support such a statement.  Her declarations fail to explain why the
19 Card B documents were not in the murder book she provided counsel, why they
20 were not there when Attorney Tom reviewed her book, why all three writings in her
21 book referring to showing Arthur Jones the photospreads <u>do not reveal</u> his positive
22 pick of another man, or why she allowed Arthur Jones to testify falsely-- and she
23 herself testified falsely-- that he made no other identifications.  Her declarations'
24 failure to address these obvious questions supports an adverse inference that the
25 identification was concealed.

26      Finally, she speculates that if they are absent, it must have been a
27 photocopying error. These conclusory statements are unfounded.  She admitted her
28

pLF'S REPLY TO DEF. CITY, RAZANSKAS AND WINN'S OPP. TO
PLF'S MOTION FOR PARTIAL S. J, &/ OR SUMMARY ADJUD.

2

lack of foundation when she testified at the habeas hearing that she had no independent recollection of photocopying the murder book in this case. Att. Supp. Excerpt Winn Anthony Habeas Test. 966.  There is no evidence of a photocopying error and no specific circumstantial evidence to support any such inference. *Cornwell v. Electra*, 439 F.3d 1018, 1030 n.9 (9th Cir. 2006) (circumstantial evidence must be specific and substantial to defeat summary judgment as it is far less probative than direct evidence); *Sullivan v. Dollar Tree*, 623 F. 3d 770, 80 (9th Cir. 2010) (vague assertions will not win over detailed evidence).

The determination on summary judgment is not a credibility inquiry but an implausibility inquiry. *McLaughlin v. Liu*, 849 F.2d 1205, 1207 (9th Cir. 1988). Incredible inferences are not persuasive evidence on summary judgment. *Matsushita Electric Indus v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)(authorizing courts on summary judgment to evaluate whether inferences from circumstantial evidence are implausible); *LVRC Holdings,* 581 F.3d 1127, 1137 (9th Cir., 2009) and, *McLaughlin,* 849 F. 2d at 1207 (if the factual context renders a claim implausible, then the responding party must come forward with more persuasive evidence to support their claim).

Defendants claim is illogical that the omission had to have been a mistake because Winn included the Carol Canty 70% photo identification in her murder book.  There is no parity between Carol Canty picking another person as 70% likely being the man she saw arguing outside the window and Arthur Jones positively picking someone else, not Cole, as the second man in the hospital.  Carol Canty was not asked to make an in court identification whereas Arthur Jones was.  Carol was not one of the three eyewitnesses forming the structure of the prosecution's case at trial. Thus, Winn had no motive to conceal Canty's 70 % identification.

Defense argues that Plaintiff Anthony premises his "entire"argument on the defense attorneys' claim that they do not recall seeing the identification documents.

Opp. at 3. But that is a mischaracterization of the facts. Plaintiff's proof that the documents were not in the murder book is not premised on 20 year old memory, rather on the absence of the documents in the murder book produced, the absence of their use by <u>any</u> attorney at trial, the damning circumstantial evidence of omission in other reports describing this event and the affirmative false testimony given.[1]

It is Plaintiff's position that even if the inadmissible declaratory statements are not stricken and are considered, no reasonable juror could find in the face of all the evidence to the contrary that the Card B documents were turned over.

### B. Exculpatory Nature and Materiality

Apparently conceding that this evidence is exculpatory (Opp. p. 8:8-10), defendants try to attack this claim with an unpersuasive argument that the evidence is not material. Defendants ignore the compelling value of the Card B identification as direct evidence of innocence. Its brief only addresses the potential use of this suppressed evidence for impeachment; defendants are wrong on that point as well.

Both sides focused on eyewitness identification in their closing arguments. Here the suppressed evidence was affirmative evidence of innocence, as it showed that someone other than plaintiff Cole went to the hospital. Because the DAs theory at trial was that Cole and Anthony did the crime together and went to the hospital

---

[1] Winn's belated excuse that she misunderstood the question is not plausible. She was asked a clear question at trial about Arthur Jones: Q: Did he make an identification of anyone other than Anthony? Her answer is clear: A: "No, he did not." Winn Excerpt Trial Test. 497; Dkt. 119-2 p.80. The truthful answer should have been "yes, he picked No. 1 on Card B." However her answer was not yes. Her claim that she actually misinterpreted this clear question to be asking "Did Arthur Jones make any identifications besides Anthony of any other defendant?" is a tortured and implausible interpretation. Winn Supp. Decl at 8-9. Winn's lie further buried the concealed evidence.

pLF'S REPLY TO DEF. CITY, RAZANSKAS AND WINN'S OPP. TO PLF'S MOTION FOR PARTIAL S. J, &/ OR SUMMARY ADJUD.

4

together, this direct evidence showing that Cole was not at the hospital also undercut the DA's argument that Anthony was at the hospital. The suppressed information on Card B describing Cole as the injured man was specific information that would have undermined Arthur Jones' switch at trial that Anthony was the injured man. The DA argued to the jury that Arthur Jones' earlier identification of Cole as the injured man was a mistake, but argued that his in court identifications were still believable. PSMF 62. He was able to make this argument because the detectives had suppressed the Card B documents. The suppressed information was powerful affirmative evidence that neither Anthony nor Cole were wounded and therefore that they were not at the scene of the murder.

The suppressed evidence also was material because it undermined the credibility of two eyewitnesses: Arthur Jones and John Jones. The case was a weak identification case with no physical evidence linking Anthony and Cole to the murder. Any evidence damaging eyewitnesses' credibility was material. *Hernandez v. City of El Paso*, 2009 WL 2096272 at *18 (undisclosed witness statement undermining eyewitness account was material because the case turned almost exclusively on eyewitness identification and lacked physical evidence linking defendant to the victim's murder); *Lindsey v. King*, 769 F. 2d 1034, 1042 (5th Cir. 1985)("destruction by cross-examination of the credibility of one of two crucial witnesses—even if the other remains untouched—may have consequences beyond the discrediting of his own testimony").

Defendants' effort to isolate and minimize the importance of Arthur Jones is unpersuasive. Opp. at 5. The DA argued the improbability of all three eyewitnesses independently making identifications in closing argument. PSMF 63. Weakening Arthur Jones would weaken the whole case. In addition, Defendants offer the inadmissible opinion of Attorney Thomason that Arthur Jones was a "lousy witness." Opp. at 5. The DA did <u>not</u> agree that Arthur Jones was a lousy witness;

rather, in closing he argued he was a credible witness and that his in court identification was credible. Att. Supp. Trial Test., Castello Closing 1091-94.

### C. THE DEFENSE OF QUALIFIED IMMUNITY IS NOT RELEVANT

Plaintiff's motion seeks partial summary judgment on three elements, and not on Defendants' mental state or the affirmative defense of qualified immunity. For these reasons this Court need not address the defense of qualified immunity for the suppression of the exculpatory evidence. Defendants' separate motion for summary judgment raised the defense of qualified immunity and Plaintiffs' Joint Opposition to that Motion addresses that defense. Plf's Joint Opp. To City. Defs' Mtn for Sum. Judg. Dkt. 118 pp. 31-35, Case No. CV 11-3241-CBM.

## II. THIS COURT SHOULD GRANT SUMMARY JUDGMENT PERTAINING TO THE TRIP TO THE ROOF: THAT THE INFORMATION WAS SUPPRESSED, AND WAS EXCULPATORY AND ITS SUPPRESSION PREJUDICED THE TRIAL

Defendants argue that nothing material was concealed related to the rooftop visit. Additionally, defendants argue the detectives are entitled to qualified immunity because they had subjectively decided this information had no evidentiary value. None of these arguments have merit.

### A. Suppression

Defendants concede that the bullets on the roof were concealed (Opp. At 10: 20-21), but deny that the rooftop visit was concealed, arguing that the LAPD reports indicated the detectives <u>went to the building</u> and interviewed John Jones on March 28 and that was good enough. Opp. at 10:12-13. Defendants however misstate the evidence. Actually, none of Winn's reports describe that they went to the building, much less inside or to the roof. See Chronological record, Def. Exh. I ("returned to crime scene"); Preliminary Investigation --no reference to roof, building or crime

pLF'S REPLY TO DEF. CITY, RAZANSKAS AND WINN'S OPP. TO PLF'S MOTION FOR PARTIAL S. J, &/ OR SUMMARY ADJUD.

6

scene (PSMF 34), and Follow-up report – no reference to the building or the roof (Def. Exh. K).  Moreover, when Winn testified, she avoided revealing the rooftop visit, protecting its concealment.  Att. Supp. Excerpt Winn Trial Test. 518: 8-26 ("we went back" in the daylight  but "we didn't talk to him [Jones]).

### B. Exculpatory Nature

Defendants argue that the bullets had no evidentiary value, a preposterous argument.  Even without the 2014 ballistics comparison of the roof bullet to the bullet in the street, the presence of expended bullets of different calibers from 4 or 5 weapons, is compelling evidence that multiple weapons were possessed and fired on that rooftop.  Jones admitted having a gun on March 28. PSMF 38.  A .357 caliber gun capable of firing a .38 bullet [same caliber as one on the roof and one in the street] was seized from the second floor of the Jones' building, where he lived and worked.  PSMF 36, 96.  The mere existence of the multiple expended bullets on the roof (undisputed) makes the evidence exculpatory. John Jones and/or his staff had the opportunity and means to shoot the bullet found in the street near Gonzalez' body.  DA Castello testified that if Jones was the shooter, possessed a weapon as a felon, and may have shot Gonzalez, that would change the case.  PSMF 110.

The detectives try to avoid this obvious exculpatory nature by arguing facts for which there is no evidentiary support, and based upon inadmissible opinion evidence.  Detectives claim in their declarations that the pocketed bullets were weathered and oxidized and thus had no evidentiary value.  First, there is no plausible factual foundation for those opinions.  They did not book them, describe what they found in their reports, or have them tested. There is no foundation for their opinions that they were fired at a festivity, such as a "prior 4th of July or New Year's event." There is no way to determine their appearance at the time, or how that appearance may have changed over time. The bullets were not maintained in a controlled environment, but kept by a lay person Corwin for 20 years. The

defendants own expert Trahin declares that there is no way to date these objects. Def. Exh. "OO"Trahin Decl.¶14.

C. Materiality

Here the correct[2] comparative context is the state of the evidence at trial, and the difference the concealed evidence would have made to a reasonable trier of fact. *United States v. Bagley*, 473 U.S. 667, 682 (1985). Furthermore, the determination of materiality is based on the suppressed evidence considered collectively, not item by item. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

The argument for guilt at trial was founded on John Jones identifying Anthony and Cole as the fleeing suspects who ran down the street. Because the prosecution's case depended so heavily on him, his credibility was important. Any evidence showing that he had a motive to deflect attention from himself, or to implicate someone else was relevant and the jury was entitled to know of it. Jones' vulnerability with the police and evidence tending to show he lied about whether he shot that night, might well have cast doubt on whether he was lying when he identified Anthony and Cole. Thus similar to *Giglio*, material evidence evidence relevant to impeachment of a key witness was withheld. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972)(withheld evidence of state's promise not to prosecute witness if he testified was material evidence that could have impeached witness); *Crivens v. Roth,* 172 F.3d 991, (9th Cir. 1999)(finding *Brady* violation for suppression of material evidence that witness had a criminal record under aliases, as he identified defendant as shooter).

Defendants' argument that there was "no evidence to suggest there had been a

---

[2] Defendants' citations to cases addressing whether officers had probable cause to arrest, and the proposition that the relevant inquiry is what was known to the officer at the time of arrest, are inapplicable to the issues in this motion. Opp. 11.

shooter on the rooftop or that John Jones was on the rooftop during the incident" is based merely upon conclusory declarations of the detectives and not upon the facts of the case. Defendants cannot dispute that the evidence in 1995 available to the detectives was that the bullet that killed Gonzalez was fired at a downward angle and from a distance. Dkt 119-10 p. 4, 6 Autopsy Report; Dkt 119-2 p. 34, Selser Trial Test. 188. The parties now dispute based on competing experts whether the angle was 40 degrees (Plaintiffs' position ) or 15 degrees (Defendants' position). However, both positions support that the weapon that killed Gonzalez was held above him and fired downward. That is also what the detectives knew in 1995. Def. Trahin Decl. ¶7; PSMF 4.

Defendants cannot rely on inadmissible double hearsay from 1994 interviews of Cedillo and Becerra, neither of whom have given sworn testimony. Opp. at 11. Defendants also rely on weak evidence of damage to the stucco near the window on Jones' building. Opp. at 11. This stucco damage did not corroborate Jones' ability to identify the perpetrators. Similarly, the footsteps down the street corroborated only that assailants fled, not who they were.

The concealed evidence tending to show that Jones or someone he employed were shooting that night would have supported that Jones had a motive to work with the LAPD to protect himself and therefore a motive to lie. Had the detectives revealed the concealed rooftop evidence, the defense lawyers could have called the detectives as witnesses, asked for the bullets, and shown the jury that at least 4 or 5 weapons had fired the six bullets Razanskas picked up. This evidence alone would have been strong proof that a third party fired that night from the rooftop.[3]

---

[3] Ineffectiveness of counsel would not excuse the Detectives concealment of *Brady* evidence. Should Defendants be held liable, evidence of concurrent causes will not affect their liability because they will be responsible for the full extent of Plaintiffs' damages under the doctrine of joint and several liability. *See Edmonds v.*

Additionally, Defendants rely on inadmissible evidence to argue that Anthony's lies convicted him. It is irrelevant what the jurors said, or what Cole's trial lawyer Tom said about "doubt going out the window" after Anthony testified. The determination of relevance is not made in a vacuum as if the concealment had never happened. Had the concealed evidence been disclosed, Anthony may not have prosecuted, presented an alibi, or even testified.

D.     QUALIFIED IMMUNITY IS NOT RELEVANT TO THIS MOTION

The defense of qualified immunity for suppression of the rooftop evidence is not an issue in this motion as it is not pertinent to whether a violation occurred. See above, p.6.

III. CONCLUSION

For these reasons, the motion for summary judgment, or summary adjudication of elements 1, 2 and 3 of each of the two claims, should be granted.

DATED: Jan. 6, 2015            Respectfully Submitted,

By:    /S/ Marilyn E. Bednarski
       MARILYN E. BEDNARSKI
       DAVID S. McLANE
       CAITLIN S. WEISBERG
       Attorneys for Plaintiff Obie S. Anthony, III

---

(…continued)
*Compagnie Generale Transatlantique*, 443 U.S. 256, 260-62 & n.8 (1979) ("the common law ... allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury …even if the concurrent negligence of others contributed to the incident"; "[a] tortfeasor is not relieved of liability for the entire harm he caused just because another's negligence was also a factor in effecting the injury"); *Weeks v. Chaboudy*, 984 F.2d 185, 189 (6th Cir. 1993) (in a civil rights action, "the actions of concurrent tortfeasors are irrelevant regarding an indivisible injury").

pLF'S REPLY TO DEF. CITY, RAZANSKAS AND WINN'S OPP. TO PLF'S MOTION FOR PARTIAL S. J, &/ OR SUMMARY ADJUD.

10